JOURNAL ENTRY AND OPINION
Cedric Gates appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of robbery and preparation of drugs for sale. On appeal, Gates presents nine assignments of error, five of which relate to his robbery conviction and four to his drug conviction. After careful review, we reject these contentions and affirm the judgment of the court regarding his robbery conviction. Regarding the drug charge, we affirm the conviction, but remand the case for resentencing.
The history of this case reveals that on December 28, 1999, at 4:30 p.m., Terri Frey stopped at a red light behind five or six cars, at the intersection of East 40th and Carnegie Avenue in Cleveland, Ohio. Suddenly she heard a loud popping noise at the front passenger window. She looked up and saw broken glass all over her and the interior of her car. At that point, a black male, whom she later identified as Cedric Gates, reached into the front seat of her car from the broken passenger window and grabbed her briefcase, which was lying on the seat. He then demanded her purse, and they both grabbed it simultaneously, looking directly at each other. Frey finally let go for fear of getting hurt, and Gates fled with both her purse and her briefcase. She then called the police and reported what had transpired. She described the person who robbed her as a light-skinned black male with a mustache in his mid-to-late 20's and about 5'4" to 5'7" tall. The police followed a trail of footprints in the snow, which led them to a home on East 38th Street, where the trail ended. They located Frey's briefcase and purse in that vicinity. When Frey arrived at home and exited her car, a rock fell from inside the driver's door. She also found scrapes across her steering wheel caused by the rock. Frey incurred some small marks on her face from the shattered glass and a deep cut on her finger from the strap during the struggle for her purse.
The next day, the police showed her photos of four black males, among them a 1985 photo of Gates. Frey did not identify Gates as the perpetrator because, according to her testimony later, the person whom she thought resembled the perpetrator appeared much younger in the photo than she remembered.
The following day, December 30, 1999, at 7:45 p.m., the police set up a surveillance team in the area of East 40th and Carnegie, led by Detective Gajowski, who situated himself at the top of a nearby building. He observed, through his binoculars, Gates carrying something in his hand at the corner of East 40th and Carnegie. He then observed Gates throw a rock at the front passenger window of a vehicle. As the car sped off, he saw Gates run westbound on Carnegie, where the police apprehended him. Upon arrest, the police found eight nickel bags of marijuana in his left jacket pocket, totaling seven grams.
The following day, Frey identified Gates in a lineup as the person who took her purse and briefcase.
Subsequently, a grand jury issued a three-count indictment against Gates: robbery in violation of R.C. 2911.02, including a notice of prior conviction pursuant to R.C. 2929.13(F)(6) and a repeat violent offender specification pursuant to R.C. 2929.01(JJ); preparation of marijuana for sale in violation of R.C. 2925.07; and possession of a criminal tool, namely, a rock, on December 28, 1999. Before the trial, the parties stipulated to a prior conviction of robbery, which resulted from a similar smash and grab incident where a driver who had stopped at a red light had his windshield smashed, gave chase after Gates, and suffered a heart attack and tragically died hours later.
Prior to the trial, Gates moved to suppress Frey's identification testimony, claiming that the identification procedures had been unnecessarily suggestive because of his photo appearance in the photo array and his physical appearance in the lineup. At the suppression hearing, Frey testified that she recognized Gates immediately not only from his appearance but also from his mannerism and movements. The trial court denied the motion to suppress, finding no undue suggestiveness in the lineup because the 1985 photo of Gates did not resemble his appearance at the lineup.
A jury trial followed, where the state introduced testimony that while there had not been reports of smash and grab incidents in the area around the time of December 28, 1999, there had been other types of robberies in the vicinity, and that after Gates' arrest, there were no smash and grab incidents. The defense presented alibi testimony from Gates' family members and according to them, one or more of them had been with him continuously throughout the day on December 28, 1999.
When the trial court instructed the jury regarding the charge of preparation of drugs for sale, it stated the following:
 Count Two, preparation of drugs for sale, Revised Code Section 2925.07. The defendant, Cedric Gates is charged in count two with preparation of drugs for sale, in violation of Revised Code Section 2925.07. Before you can find that defendant guilty, you must find beyond a reasonable doubt that on or about the 30th day of December, 1999, and in Cuyahoga County, Ohio, the defendant did knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, to-wit: marijuana, a Schedule I drug, knowing or having reasonable cause to believe such drug was intended for sale or resale by the offender or another. (Emphasis added.)
In addition, the court instructed the jury that [s]ale includes delivery, barter, exchange, transfer, or gift or offer thereof * * *.
Following trial, the jury found Gates guilty of robbery with a deadly weapon and guilty of preparation of drugs for sale, but not guilty of possession of a criminal tool. The court then imposed the maximum sentence of eight years for the robbery, and imposed a consecutive three year term for the repeat violent offender specification. In addition, the court erroneously noted that the drug charge constituted a fourth degree felony and imposed a twelve-month concurrent sentence on that count.
Gates now appeals, raising nine assignments of error for our review. We first consider those concerning the robbery.
 I. THE APPELLANT WAS DENIED HIS DUE PROCESS RIGHTS IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE ONE, SECTION 10, OF THE OHIO CONSTITUTION BECAUSE THE POLICE LINEUP CAUSED A SUBSTANTIAL LIKELIHOOD OF IRREPARABLE MISIDENTIFICATION.
Gates contends that the photo array and the police lineup had been unduly suggestive, creating a substantial likelihood of misidentification. The state counters that Gates failed to prove that the procedures had been unduly suggestive. The issue then concerns whether the identification procedures had been unduly suggestive as to cause a substantial likelihood of misidentification.
In Manson v. Brathwaite (1977), 432 U.S. 98, the Supreme Court provided the standard for suppression of a witness's identification:
 We therefore conclude that reliability is the linchpin in determining the admissibility of identification testimony * * *. The factors to be considered * * * include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of this prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
In State v. Halley (1994), 93 Ohio App.3d 71, 76, the court stated:
 The threshold question is whether the photo identification is impermissibly suggestive. All identification processes are inherently suggestive. Due process is violated only when the process is so impermissibly suggestive that the identification is unreliable in that there exists a substantial likelihood of irreparable misidentification.
Here, Gates complains that his recurrent appearance in the photo array and the lineup renders the identification procedures unduly suggestive. We disagree. An examination of the record reveals that Gates' photo from fifteen years ago shown in the photo array did not bear much, if any, resemblance of him at the time of the lineup. Further, the record indicates that Frey looked directly at Gates when they were both grabbing her purse, and therefore had an opportunity to view Gates at the time of the crime; she also testified that she recognized Gates immediately not only from his appearance but also from his mannerisms and movements, thus demonstrated a high level of certainty; and only three days lapsed between the crime and the lineup identification. Frey's initial non-identification at the photo array only strengthens the accuracy of her lineup identification because, as she testified, she did not identify Gates from the photo because while it resembled the perpetrator, it appeared to be a much younger person than the perpetrator. Therefore, weighing the factors pointing to the reliability of the identification in the instant case against any potential corrupting effect of the alleged suggestive identification, we do not think the lineup had been so impermissibly suggestive as to bring about a substantial likelihood of irreparable misidentification. Gates' first assignment of error is not well taken.
Gates' second and third assignments relate to the admission of Gates' conduct on December 30, 1999, which we now consider together.
 II. THE TRIAL COURT ERRED WHEN IT ADMITTED OTHER ACTS TESTIMONY IN VIOLATION OF R.C. 2945.59, EVID. R. 404(B) AND MR. GATES' RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.
 III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10, OF THE OHIO CONSTITUTION.
Gates complains that the state relied on other-act evidence to prove Gates' guilt in the instant case, namely, the December 30, 1999 incident and the non-smash-and-grab robberies reported in the area of East 30th, Euclid and Prospect, which ceased after Gates' arrest. The state counters that Gates' activities on December 30, 1999 had been offered to show his modus operandi in committing the robbery on December 28, 1999. The issue then concerns whether the trial court erred in admitting evidence regarding Gates' conduct on December 30, 1999.
Evid.R 404 provides, in pertinent part:
 Rule 404. Character Evidence Not Admissible to Prove Conduct; Exceptions; Other Crimes
* * *
 (B) Other Crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
In State v. Lowe (1994), 69 Ohio St.3d 527, the court stated:
 Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. * * * `Other acts' may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.' (Citation omitted.)
Here, the police observed Gates throwing a rock at the front passenger window of a vehicle at the same intersection where Frey had been robbed two days earlier. The manner of the attempted smash and grab robbery on December 30, 1999 may not be unique, as Gates contends; however, what makes it sufficiently distinct as to identify Gates as the perpetrator of the smash and grab robbery against Frey, is the fact that the attempted smash and grab on December 30, 1999 occurred at the very same location where the crime against Frey occurred. Considering the standard set forth in Lowe, we conclude that Gates' activities on December 30, 1999 are admissible because it proves identity by establishing a modus operandi applicable to the crime against Frey, in that it showed that he committed a similar crime and that a distinct and identifiable scheme was used in the commission of the charged offense.
Gates also complains that the trial court admitted evidence regarding non-smash-and-grab robberies in the vicinity of East 40th and Carnegie and, during the oral argument before our court, challenged the prosecutor's comments during the closing argument, that no other smash and grab robberies were committed since Gates had been arrested. Gates refers us to the following colloquy on redirect examination of Detective James Gajowski:
 Q Okay. And you had, from my understanding of your testimony, rashes of these smash and grabs over the years, that's been your impression that these happen once they start, they [don't] stop they keep going until somebody is arrested, then they stop; is that correct?
A That's correct.
 Q And with regard to this particular time, in late December 1999, had there been a rash of smash and grabs in the area?
 A I know that there had been a number of robberies in the East 30th Street area, East 30th, Euclid, Prospect.
 Smash and grabs, I couldn't find any other reports of smash and grabs that happened prior to Mrs. Frey's incident.
 Q And then after the smash and grab that occurred on December 28th and subsequent to the arrest of this defendant on December 30th, when was the next smash and grab in the Third District, to your knowledge?
A I never heard of one after that, sir.
 Q So it stopped after the defendant's arrest; is that correct?
A Yes. (Emphasis added.) (Tr. 283)
We note that the answer given by Detective Gajowski to the prosecutor's question about a rash of smash and grab robberies in the area could not reasonably have been anticipated by the prosecutor. Further, Gajowski's answer did not suggest that Gates committed these non-smash-and-grab robberies. The failure to object or to move to strike Detective Gajowski's response does not suggest ineffective assistance of counsel because the testimony, by itself, does not identify or implicate Gates. To sustain a position that his counsel had been ineffective, Gates must demonstrate both deficient performance and that but for such conduct, the outcome of the trial would have been different. See Stickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136.
Here testimony about unrelated crimes did not attribute conduct to or implicate Gates, and the record contains independent evidence of Gates' identity as the individual who committed the smash and grab robbery in this case. The trial court therefore did not commit error in admitting other act evidence of the December 30, 1999 smash and grab, and Gates has not demonstrated ineffective assistance of counsel. Accordingly, we overrule these assignments of error.
Gates' sixth assignment of error states:
 VI. THE TRIAL COURT DENIED MR. GATES DUE PROCESS OF LAW BY FAILING TO DISMISS THAT PORTION OF COUNT ONE RELATING TO THE USE OF A DEADLY WEAPON.
In this case, the state indicted Gates for committing alternative forms of robbery, defined in R.C. 2911.02 as follows:
 (A)No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1)Have a deadly weapon on or about the offender's person or under the offender's control;
 (2)Inflict, attempt to inflict, or threaten to inflict physical harm on another.
Here, the state could have proven its robbery charge against Gates by demonstrating that while committing or attempting to commit a theft offense, Gates attempted to cause physical harm to Frey by throwing a rock through the window of her car, or that Gates had a deadly weapon — a rock — on or about his person or under his control, or that he did both.
His assignment of error, however, relates only to the trial court's failure to dismiss the charge regarding to the use of a deadly weapon. The record reveals that Gates never made a Rule 29 motion for acquittal regarding the use of a deadly weapon in connection with robbery. In the text of the brief following the assignment of error, however, Gates argues instead that his conviction of robbery should be reversed because there is insufficient evidence as a matter of law to prove that the rock used in this case constitutes a deadly weapon, and the record is unclear whether this might have been the basis of the jury's guilty verdict against him. The state counters that sufficient evidence existed to support the jury's finding that Gates is guilty of robbery by finding that he used the rock as a deadly weapon. The issue then concerns whether sufficient evidence existed for the jury to find Gates guilty of robbery owing to the use of a deadly weapon.
In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, syllabus.
The definition of a deadly weapon is set forth in R.C. 2923.11:
 As used in sections 2923.11 to 2923.24 of the Revised Code:
 (A) "Deadly weapon" means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon.
Furthermore, the Commentary of the Legislative Service Committee (1973) provides that:
 "Deadly weapon" is defined as any device capable of causing death, and which is either designed or specially adapted for use as a weapon (such as a gun, knife, billy, or brass knuckles), or is carried, possessed, or used as a weapon (such as a rock or cane when used for offensive or defensive purposes).
In addition, as the Supreme Court of Ohio held, in State v. Wharf (1999), 86 Ohio St.3d 375, syllabus, * * * [t]o establish a violation of R.C. 2911.02(A)(1), it is not necessary to prove a specific mental state regarding the deadly weapon element of the offense of robbery.
Here, the evidence in this case demonstrates that Gates threw the rock at the passenger side of an occupied vehicle stopped at a red light, and fifth in the line of traffic, such that the driver could not escape — with such force that the rock smashed the passenger side window, traversed the interior of the vehicle, and scraped across the steering wheel, lodging between the driver's side door and the left side of the car. Examination of the rock reveals that it weighs more than a pound and the evidence suggests that it had been hurled against the window with enough force to not only break the window, but completely traverse the interior of the car. applying the statutory definition of a deadly weapon, we conclude that the rock thrown into Frey's trapped car is an instrument capable of inflicting death and that Gates possessed, carried, and used it as a weapon in this case. Therefore, sufficient evidence exists to support the jury's finding of guilt in the case regardless of whether that verdict had been based on Gates' use of a deadly weapon or his attempt to cause physical harm to Frey. See also, State v. Kutscher (July 25, 1984), Summit App. No. 11574, unreported determining that there is a probability that a rock thrown in the direction of a person will cause injury); State v. Zarlenga (June, 1989), Cuyahoga App. No. 55414, unreported (finding an object hurled at an occupied car with sufficient force to shatter the windshield to be a deadly weapon). Finally, it is immaterial whether Gates had only intended to use the rock to break the car window, as he contends the evidence at best shows. No proof of a specific mental state is necessary to establish the deadly weapon element of the offense of robbery as defined by R.C.2911.02(A)(1). State v. Wharf, supra.
Because we find that there is sufficient evidence to support the jury's verdict finding Gates guilty of robbery owing to the use of a deadly weapon in conjunction with a theft offense, Gates' contention that his guilt must be based on the jury's unanimous finding that he inflicted or attempted to inflict physical harm while committing a theft offense is not well taken. Consequently, be overrule this assignment of error.
Gates' eighth assignment of error states:
 VIII. THE TRIAL COURT ERRED IN SENTENCING MR. GATES TO AN ELEVEN-YEAR SENTENCE ON COUNT ONE, ROBBERY AS A REPEAT VIOLENT OFFENDER.
Gates first contends that the trial court erred when it sentenced Gates to a maximum eight year prison term for the robbery. The state counters that the court properly imposed the maximum sentence. The first issue then concerns whether the trial court erred in sentencing Gates to a maximum prison term for the robbery.
In considering an appeal of a maximum sentence, we recognize that R.C.2929.14(C), states that:
 * * * the court imposing a sentence upon an offender for a felony may impose the longest prison term * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders * * *.
In State v. Edmonson (1999), 86 Ohio St.3d 324, the court stated at 329 that the record must reflect that the court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C.2929.14(C).
Additionally, R.C. 2929.19(B)(2) provides that when imposing the maximum sentence on an offender for a single offense, a trial court must make a finding that gives its reasons for the maximum prison term.
In this case, the court made the following statements at the sentencing hearing:
 * * * [B]efore imposing the additional term, I would have to find both the following: That the maximum term is insufficient to punish the defendant and protect the public because the risk of recidivism outweighs any mitigating factor; and two, the maximum term is demeaning to the seriousness of the offense. * * * I have a person who is convicted of this same crime of smashing a window in a vehicle that was stopped in the same area of the city with the purpose of robbing, and in that case somebody did die. There was an attempt to cause the serious physical harm. When you break the a window of a motor vehicle, anything can happen. They can drive off the road and die. Anything is a potential. There is an attempt. It could cause serious harm. * * * This defendant did spend a lot of time in prison, comes right back and commits the very same crime. The Court finds that recidivism is highly likely, and the Court needs to protect society from these types of crimes. Further, as the presentence investigation report states, these are not just his only convictions. * * * [S]o the Court does find this the worst form of the offense since it is a robbery with the same intent he exhibited in the past. (Tr. 439.)
In our view, the record reflects that the trial court made a finding that gave its reasons as to why Gates posed the greatest likelihood of committing future crimes and why his offense constituted the worst form of the offense. As to the finding of recidivism, the court cited Gates' prior criminal record and noted that he committed the robbery against Frey after he had served a prison term for a similar smash and grab robbery which resulted in the death of that victim. As to the finding of the worst form of the offense, the court commented on the dangerous nature of smashing a window of a car stopped for a red light.
During the oral argument before our court, defense counsel urged that in making its finding regarding the worst form of the offense, the court referred to Gates' prior criminal history — offender characteristics, not offense characteristics. While this is true, we note that the record also contains other findings made by the court although not a model of imposing a maximum sentence as to why it believed Gates committed the worst form of this offense: an attempt to cause serious physical harm, the possibility that when a window of a motor vehicle is broken anything can happen, and the risk that a driver can drive off the road and die.
Gates also challenges the trial court's use of the words highly likely as not in conformity with the statutory greatest likelihood of committing future crimes. This appears to be a distinction without a difference, and we recognize that sentencing defendants in felony cases is not a game of semantics. The trial court could have been more precise, but did, in our view, make the necessary statutory finding in this regard.
Furthermore, a court can impose a maximum sentence pursuant to R.C.2929.14(C) if it makes either a finding of the greatest likelihood of committing future crimes or a finding that the defendant committed the worst form of the offense. Edmonson, supra. Hence, the court here had no obligation to make both findings as either finding would have satisfied the requirements of R.C. 2929.14(C) and 2929.19(B)(2)(d). Accordingly, we do not believe the court committed reversible error in imposing a maximum sentence on dates.
Next, Gates complains that the court erred in applying a repeat violent offender specification pursuant to R.C. 2929.14(D)(2)(b) to impose an additional three-year sentence. He argues that the court's findings regarding the application of the repeat violent offender specification had been insufficient, because the court did not consider the various aggravating and mitigating factors set forth in R.C. 2929.12 as required by R.C. 2929.14(D)(2)(b). The state asserts that the court properly imposed an additional term under the repeat violent offender specification. The issue is thus whether the court made sufficient findings before imposing three additional years pursuant to the repeat violent offender specification.
R.C. 2929.14(D)(2)(b) provides:
 (b) If the court imposing a prison term on a repeat violent offender imposes the longest prison term from the range of terms authorized for the offense under division (A) of this section, the court may impose on the offender an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years if the court finds that both of the following apply with respect to the prison terms imposed on the offender pursuant to division (D)(2)(a) of this section and, if applicable, divisions (D)(1) and (3) of this section:
 (i) The terms so imposed are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
 (ii) The terms so imposed are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense.
he mitigating and aggravating factors enumerated in R.C. 2929.12
or felony sentencing include the following:
2929.12 Seriousness and recidivism factors
 (A) * * * the court shall consider the factors set forth in divisions (B) and (C) of this section relating to the seriousness of the conduct and the factors provided in divisions (D) and (E) of this section relating to the likelihood of the offenders' recidivism * * *
 (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense:
 (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim.
 (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense.
* * *
 (C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense:
* * *
 (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property.
* * *
 (D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes:
* * *
 (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions.
 (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions.
 (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse.
 (5) The offender shows no genuine remorse for the offense.
 (E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes:
* * *
 (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense.
 (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years.
 (4) The offense was committed under circumstances not likely to recur.
 (5) The offender shows genuine remorse for the offense. * * * (Emphasis added.)
Here, a more complete record made by the trial court during sentencing would have more clearly indicated its consideration of the mitigating or aggravating factors enumerated in R.C. 2929.12. However, the trial court noted during sentencing that an additional sentence could be imposed on a repeat violent offender if the maximum term is insufficient to punish the defendant and protect the public because the risk of recidivism outweighs any mitigating factor; and two, the maximum term is demeaning to the seriousness of the offense. (Tr. 438.) On the basis of this language and the language used by the trial court, supra, when it discussed the great likelihood of recidivism and the serious nature of Gates' offense, we have concluded that the trial did consider the aggravating factors set forth in R.C. 2929.12 before imposing an additional three year term pursuant to R.C. 2929.14(D)(2)(b). Therefore, after a careful review of the record, we overrule this assignment of error.
Gates' fourth, fifth, seventh, and ninth assignments of error concern his drug conviction and sentencing. We consider his fourth and fifth assignments of error together because they both relate to the trial court's jury instructions for the offense of preparation of drugs for sale. These assignments of error state:
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE JURY TO THE EFFECT THAT MR. GATES COULD BE CONVICTED OF PREPARATION OF DRUGS FOR SALE IF HE POSSESSED MARIJUANA WITHOUT INTENDING TO SELL IT FOR VALUABLE CONSIDERATION.
 V. MR. GATES WAS DENIED HIS RIGHTS TO EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION WHEN HIS ATTORNEY FAILED TO OBJECT TO THE TRIAL COURT'S INCORRECT JURY INSTRUCTIONS AS TO COUNT TWO.
Gates asserts that the trial court committed plain error when its jury instruction reduced the statutory burden placed on the state regarding the intent element and the sale element in the offense of preparation of drugs for sale. The state asserts that the court might have been confusing in its instruction, but it in no way diminished the necessary proof required of the state, and even if it did, the evidence offered supported a guilty verdict. The issue for our review thus concerns whether the trial court correctly instructed the jury regarding the elements of the offense of preparation of drugs for sale. Specifically, Gates complains that the trial court erred in its jury instruction regarding the intent element and the sale element required by R.C. 2925.07. We address the intent element first.
R.C. 2925.07 provides, in pertinent part:
 2925.07 PREPARATION OF DRUGS FOR SALE; AGGRAVATED PREPARATION OF DRUGS FOR SALE; PENALTIES
 (A) No person shall knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance when the person intends to sell or resell the controlled substance or when the person knows or has reasonable cause to believe that another person intends to sell or resell the controlled substance.
In comparison, R.C. 2925.03(A)(2), the predecessor of R.C. 2925.07, states:
2925.03 Trafficking in drugs.
(A) No person shall knowingly do any of the following:
* * *
 (2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe the controlled substance is intended for sale or resale by the offender or another.
Gates asserts that the court erroneously instructed the jury that the intent element could be satisfied by finding that Gates had reasonable cause to believe he would sell the drugs, while the statute requires a finding of a specific intent with which a defendant intends to sell the drugs. Gates referred the court to the predecessor of R.C. 2925.03(A)(2), supra, and argues that the old version of the statute required the reasonable cause to believe mental state with regard to both a defendant's intent to sell drugs and the defendant's knowledge of another's intent to sell while the current version of the statute imposes a stricter intent requirement regarding a defendant's own intent to sell. The court erred, according to Gates, when it used language similar to that used in the old version of the statute, thus requiring the jury to find merely that Gates had reasonable cause to believe that he would sell the drugs.
Reviewing the language of R.C. 2925.07 and its predecessor, as well as the court's jury instructions regarding the intent required to find Gates guilty of preparation of drugs for sale, we have concluded that the two versions of the statute do not impose different mental states regarding a defendant's intent to sell drugs. The current version of the statute simply clarifies the confusion caused by the language used in the repealed statute: knowing or having reasonable cause to believe such drug was intended for sale or resale by the offender or another. We think this language could not have meant, as Gates suggests, that the reasonable cause to believe standard applies to a defendant's own intent to sell as well as to another's mental state in selling drugs. This reading is simply incongruous. Therefore, the only reasonable interpretation of the sentence, used in the repealed statute and in the trial court's instructions, is to read it as requiring that a defendant knows or intends that the drugs are for sale, or has reasonable cause to believe that another intends the drug to be for sale. The current version of the statute clarifies the potential confusion, stating that a person shall not prepare a controlled substance when the person intends to sell or resell the controlled substance or when the person knows or has reasonable cause to believe that another person intends to sell or resell the controlled substance. Unfortunately, the trial court adopted the confusing phrasing from the repealed statute in its jury instructions instead of citing from the statute in its current form. Because we have concluded that the sentence at issue from the old R.C. 2925.03(A)(2), although confusing, has only one reasonable reading, we do not think that the trial court's instructions imposed a lesser culpable mental state to be proven by the state than what R.C. 2925.07 requires. See also, State of Ohio v. Attaway (April 5, 2001), Cuyahoga App. No. 77641, unreported (the elements of the offense in former R.C. 2925.03(A)(2) are no different than those in R.C. 2929.07(A)).
Gates also complains that the court erred in instructing the jury that a sale includes delivery, barter, exchange, transfer, or gift or offer thereof * * *. He argues that the ordinary meaning of sell, i.e., the transfer of an item for consideration, should control for the purposes of R.C. 2925.07. The issue thus concerns that selling means as referred to in R.C. 2925.07.
R.C. 2925.01 states that [a]s used in this chapter: * * * `sale' * * * ha[s] the same meanings as in section 3719.01 of the Revised code. R.C. 3719.01 defines a sale as:
 (AA) "Sale" includes delivery, barter, exchange, transfer, or gift, or offer thereof, and each transaction of those natures made by any person, whether as principal, proprietor, agent, servant, or employee.
In reviewing this issue, we are aware that the word sell and its nominal form sale ordinarily mean a transfer of an item for consideration but we note that the word sale in Chapter 2925 of the Revised Code is given a statutory definition which is distinct from its ordinary meaning to include gratuitous transfers as well as transfers for consideration. Gates asks us to read the word sell in R.C. 2925.07 in its ordinary meaning, i.e., to transfer an item for consideration, and to regard the trial court's instructions erroneous in that it allowed the jury to find Gates guilty even if he only intended to give the drugs away as gifts. Upon examining the statute, however, we note that R.C. 2925.07 is titled Preparation of drugs for sale while the word sell, but not its nominal form, sale, appears in the text of Section (A). from this, we can only conclude that the word sell in the text of R.C. 2925.07(A) is merely the verbal variant of the word sale and does not denote a different type of transactions, as Gates urges. Gates' argument that the word sell should be given its ordinary meaning despite the statutory meaning given to the word sale is not well taken. See also, Attaway, supra (although the common definitions of `sale' and `sell' imply an exchange for value, the statutory definition plainly intends a broader meaning.) Therefore the trial court did not err in its jury instructions regarding the selling element of R.C. 2925.07. Consequently, we overrule his Fourth assignment of error.
In connection with his claim of erroneous jury instructions relating to the drug charge, Gates asserts, in his fifth assignment of error, that he did not receive effective assistance of counsel due to his counsel's failing to timely object to the error. Because we have concluded that the trial court did not err in its jury instructions, we overrule this assignment of error.
Gates' seventh assignment of error states:
 VII. THE TRIAL COURT DENIED MR. GATES DUE PROCESS OF LAW BY FAILING TO DISMISS COUNT TWO BECAUSE OF INSUFFICIENCY OF THE STATE'S EVIDENCE.
Gates asserts that because the state's evidence had been insufficient as a matter of law to support a guilty verdict, the trial court denied him due process by failing to dismiss the charge of preparation of drugs for sale against him. The state counters that the state presented sufficient evidence for the jury to find Gates guilty of preparation of marijuana for sale. The issue thus concerns whether the state produced sufficient evidence for the jury to find Gates guilty of preparation of marijuana for sale.
The United States Supreme Court, in Jackson v. Virginia (1979),43 U.S. 307, 319 provides the standard of reviewing for a sufficiency of evidence claim.
 * * * the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be * * * to determine whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt. * * *
 [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (Emphasis added.)
In State v. Jenks (1991), 61 Ohio St.3d 259, the Supreme Court of Ohio stresses the equal weight to be given to circumstantial evidence:
 Likewise, we have stated that * * * proof of guilt may be made by circumstantial evidence as well as by real evidence and direct or testimonial evidence, or any combination of these three classes of evidence. All three classes have equal probative value, and circumstantial evidence has no less value than the others.
Here, the record reveals that the police found eight individually packaged bags of marijuana in Gates' jacket pocket when they arrested him at East 40th and Carnegie. Detective Gajowski, a twenty-year veteran, opined that, on the basis of his years of experience as a Cleveland detective, it is not usually common for a person to have eight nickel bags in his possession for his own personal consumption. Applying the standard of review for a sufficiency of evidence claim, and mindful of the equal probative value of circumstantial evidence, we have concluded that the jury would, considering the circumstantial evidence of Gates' possession of eight nickel bags of marijuana as well as Detective Gajowski's testimony, have found all the essential elements of preparing the marijuana for sale beyond a reasonable doubt. Gates' assertion that the state did not offer any evidence to show that he bagged the marijuana himself is immaterial, because the statute criminalizes, among other conducts, transporting a controlled substance when the person intends to sell it, and therefore, a defendant needs not to have prepared the drug for distribution himself to run afoul of R.C. 2925.07. Consequently, we overrule his seventh assignment of error.
In his last assignment of error, Gates states the following:
 IX. THE TRIAL COURT ERRED IN GIVING MR. GATES A MAXIMUM SENTENCE ON COUNT TWO.
Gates contends that the trial court erred in sentencing him to a twelve month term for preparation of drugs for sale because the court mistakenly believed that the drug charge constituted a fourth degree felony and because it imposed a maximum sentence without the requisite findings on the record. The state conceded the sentencing error.
The record indicates that the trial court erroneously indicated that Gates' drug offense constitutes a fourth degree felony when in fact preparation for sale of less than two hundred grams of marijuana constitutes a fifth degree felony, punishable by a maximum sentence of twelve months. A court may impose the maximum sentence only upon offenders who committed the worse forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * * and upon certain repeat violent offenders * * *. R.C. 2929.14(C). R.C. 2929.19(B)(2)(d) requires the trial court to make a finding stating its reasons for imposing a maximum sentence for an offense. The record, however, is devoid of any findings or reasons required by he statute. Therefore, we are constrained to remand the case for sentencing of Gate's offense of preparation of drugs.
On the basis of the foregoing, we affirm the judgment of the trial court with regard to the guilty verdict and the sentence imposed for the robbery and affirm the guilty verdict regarding the preparation of drugs for sale charge, but remand the matter for resentencing on that charge in conformity with this opinion.
Conviction affirmed. Sentencing affirmed in part and reversed in part, and matter remanded for resentencing on the charge of preparation of drugs for sale.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for resentencing consistent with this Journal Entry and Opinion.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _________________________ JUDGE TERRENCE O'DONNELL:
JAMES D. SWEENEY, P.J. and JAMES J. SWEENEY, J. CONCUR.